UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

_____

JEFFREY D. LEWIS,                                    Case No. 1:26-cv-

      Plaintiff,                                            Honorable

v.

THE  KIMBERLY  VARGAS  REVOCABLE
TRUST,  PETER  VARGAS,  and  KIMBERLY
VARGAS,

      Defendants.

---

Herman D. Hofman (P81297)
VARNUM LLP
*Attorneys for Plaintiff*
P.O. Box 352
Grand Rapids, MI  49501-0352
(616) 336-6000
hdhofman@varnumlaw.com

---

## COMPLAINT

Plaintiff Jeffrey D. Lewis ("Plaintiff" or "Lewis"), through his counsel, VARNUM LLP,

states for his Complaint against Defendants The Kimberly Vargas Revocable Trust, Kimberly

Vargas, and Peter Vargas (collectively "Defendants") as follows:

## NATURE OF ACTION

1. This is a case about an estranged husband's attempt to sabotage and prevent the sale

and purchase of property owned and contracted for sale by his wife in her capacity as sole trustee

and beneficiary of her revocable, living trust.   Peter and Kimberly Vargas are Colorado Springs,

Colorado residents.  Kimberly Vargas, as sole trustee of the Kimberly Vargas Revocable Trust,

contracted with a seller's agent and broker in Michigan to list for sale for $1.5 million her vacation

1

home at 258 W. Lowell St., Pentwater, MI 49449 (the "Property"). Lewis, who for years had been looking for a home in Pentwater that could accommodate his family of seven children, made a $1,525,000 offer to purchase the Property, which was accepted by Ms. Vargas. Lewis and the Vargases thereafter signed a written purchase agreement for the sale and purchase of the Property in June 2026, and Lewis paid an earnest deposit on the Property in early July, which continues to be held by Ms. Vargas and/or the title company. Peter Vargas, in turn, admitted the sale of the Property was moving forward thereafter, discussing the sale with Lewis and the obligation to move Vargases' personal weight-lifting equipment and other possessions out of the Property to Colorado.

2.      In mid-July, however—approximately two weeks before closing was scheduled to occur and apparently as part of his attempt to navigate marital issues stemming from his infidelity to his wife—Peter Vargas decided that *he* (who has no ownership interest in the Property), would attempt to prevent the scheduled closing from moving forward. To accomplish his goal, Peter Vargas for the first time in mid-July 2026 represented to Lewis that the sale would no longer move forward due to purported "big traumas" he experienced *after the purchase agreement was signed.* Thereafter, Peter Vargas's counsel clarified for Lewis's counsel—in writing—that although Peter Vargas apparently believed he lacked the mental capacity to contract for the *sale* of the Property and the purchase agreement was therefore supposedly void, Peter Vargas was still willing and had the mental capacity to contract for the sale of an *option to purchase* the Property and/or a *right of first refusal* on the Property.

3.      As a result of Peter Vargas's sabotaging, the closing of the Property did not occur as scheduled on August 3. Further, Peter Vargas and his counsel have repudiated the contract and confirmed closing will no longer occur. As a result, Lewis brings this action for breach of contract, specific performance, and to quiet title in the Property.

**JURISDICTION AND VENUE**

4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because this matter involves a controversy between citizens of different States and the amount in controversy exceeds $75,000, exclusive of interest and costs.  The Purchase Agreement at issue provides for the sale of real property at a purchase price of $1,525,000.

5.      Plaintiff Jeffrey D. Lewis is a citizen of the State of Texas, residing in Dallas, Texas.

6.      Defendants Peter Vargas and Kimberly Vargas are both citizens of the State of Colorado, residing at 9740 Brassie Ct, Colorado Springs, CO 80920.  Kimberly Vargas is the Settlor and sole acting Trustee of the Kimberly Vargas Revocable Trust dated January 30, 2017 (the "Trust"), which holds record title to the Property at issue in this action.  Complete diversity of citizenship therefore exists between Plaintiff and Defendants - Plaintiff is a citizen of Texas and all Defendants are citizens of Colorado.

7.      This Court has personal jurisdiction over Defendants because they contracted to sell real property located in the State of Michigan at 258 W. Lowell St., Pentwater, MI 49449; Defendant Kimberly Vargas, as Trustee, holds record title to that Michigan real property; Defendants used and occupied the Michigan property on a part-time basis; and Defendants purposefully availed themselves of the privilege of conducting real estate transactions in Michigan.

8.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the real property that is the subject of this action is situated in Oceana County, Michigan, within the Western District of Michigan, and a substantial part of the events and omissions giving rise to the claims occurred in this District.

## PARTIES

9.      Plaintiff Jeffrey D. Lewis is an individual and citizen of the State of Texas, residing in Dallas, Texas.

10.     Defendant Peter Vargas (also known as Pedro Vargas, III) is an individual and citizen of the State of Colorado, residing at 9740 Brassie Ct, Colorado Springs, CO 80920.

11.     Peter Vargas is the founder of "Advance Your Reach" and a self-proclaimed "Master at teaching people how to grow their businesses with stages."  According to Advance Your Reach's website, "[s]ince 2003, [Peter Vargas] and his team have booked over 25,000 stages worldwide–and generated tens of millions of dollars of revenue through those stages."  He founded Advance Your Reach in 2016 and "has used stages to grow to over $10 million in 3 years, hitting the Inc. 5000 list of the fastest-growing private companies in America for the first time in 2019."

12.     Defendant Kimberly Vargas is Peter Vargas's wife and a resident and citizen of Colorado, residing at 9740 Brassie Ct, Colorado Springs, CO 80920.

13.     Kimberly Vargas is the Settlor and sole acting Trustee of the Kimberly Vargas Revocable Trust dated January 30, 2017 (the "Trust"), which holds record title to the Property at issue in this action.

## GENERAL FACTUAL ALLEGATIONS

### A.     Plaintiff's Personal and Family Connection to Pentwater, Michigan

14.     Jeffrey Lewis grew up in North Muskegon, Michigan. The Pentwater and West Michigan region holds deep personal and family significance for him.

15.     Lewis attended and graduated from Muskegon Reeths-Puffer High School in 1987, Muskegon Community College in 1989, and Michigan State University in 1991.  His parents owned and operated the Channel Lane Inn in the Pentwater area in the 1990s, and Lewis and his family have spent many vacations, holidays and weekends in the Pentwater area since then.

16.     Lewis's parents later built and lived in a home in Pentwater, Michigan for approximately fifteen years.  His sister has owned a home in Pentwater for approximately twenty years.

17.     Lewis has seven children.  Finding a home large enough for his entire family in the Pentwater area proved exceptionally difficult over many years of searching.

18.     Lewis and his family have long enjoyed the beaches, golfing, and other recreational activities in the Pentwater area.  The property at issue in this action represented a family legacy home and the culmination of years of searching.  Lewis and his family had planned to attend Pentwater's homecoming celebration in the summer and fall of 2026 at the property.

**B.      The Property and the Purchase Agreement**

19.     The property at issue is located at 258 W. Lowell St., Pentwater, MI 49449.  The home on the Property is a 3,213 square foot home, which the Vargases contracted to construct in 2023.  See **Exhibit 1**, 7/7/2026 Home Inspection Report (home's approximate age is 3-5 years).

20.     Title to the Property is, and at all relevant times has been held by Kimberly Vargas, as Trustee of the Kimberly Vargas Revocable Trust dated January 30, 2017, as confirmed by Title Insurance Commitment No. 26-460437 issued by Oceana Land Title & Escrow Agency (agent for First American Title Insurance Company) with Commitment Date of June 16, 2026, and by the Warranty Deed recorded March 1, 2024 in Oceana County Liber 2024, Page 3096, and the Certificate of Trust recorded in Oceana County Liber 2024, Pages 3099-3105.  **Exhibit 2,** Title Insurance Commitment No. 26-460437; **Exhibit 3,** Vesting Documents/Certificate of Trust of the Kimberly Vargas Revocable Trust.

21.     Below are several pictures of the Property and the home, as displayed on the Zillow.com listing, which also displays as "pending" sale as of July 31, 2026:



**$1,500,000**
258 W Lowell St, Pentwater, MI 49449

5 beds  4 baths  3,213 sqft

22.     On or about spring 2026, Kimberly Vargas entered into a listing agreement with Coldwell Banker Anchor Real Estate, Inc., to list the Property for sale at $1,500,000 and also completed seller disclosures regarding the Property's condition. **Exhibit 4**, Seller's Disclosures.

23.     Lewis, through his agent, thereafter made a $1,525,000 cash offer, with no contingencies, to purchase the Property. Kimberly Vargas accepted this offer through her listing agent, Monica Owens with Coldwell Banker Anchor Real Estate.

24.     On June 26, 2026, Lewis and Peter Vargas and Kimberly Vargas executed the Michigan Regional Purchase Agreement (the "Purchase Agreement") for the sale of the Property at a purchase price of $1,525,000. **Exhibit 5**, Purchase Agreement (executed June 26, 2026).

25.     All signatures were executed via dotloop electronic signature on June 26, 2026 (Kimberly Vargas at 2:34 PM MDT; Peter Vargas at 2:19 PM MDT; Lewis's acceptance completed the same date). The Purchase Agreement was thereby fully executed on June 26, 2026.

26.     Although the listing and seller's agents with Coldwell Bank Anchor Real Estate were aware preparing the Purchase Agreement that the Kimberly Vargas Trust owns the Property, the dotloop electronic signature software spacing did not allow them to insert the word "Trustee" after Kimberly Vargas's name on the signature form, and that is why it was not inserted.

6

27.    Further, having Kimberly Vargas's signature initials be "KGV, T" was not technically possible with the dotloop software.

28.    Per the Purchase Agreement, the sale of the Property included all furnishings and fixtures of the home, with the exception of a list of items Kimberly Vargas provided to the listing agent.

29.    The Purchase Agreement provides for a scheduled closing and occupancy date of August 3, 2026.  *See* **Ex. 5**.  The Purchase Agreement further provides for earnest money of $10,000 to be deposited with Anchor Real Estate of Hart PC.

30.    On June 30, 2026, Earnnest (a digital earnest money platform) sent Lewis a request, at the direction of Seller's agent Sarah Hardy, to pay $10,000 in earnest money to Coldwell Banker Anchor/Anchor Real Estate of Hart PC for the Property.

31.    On July 4, 2026, at 10:42 AM EST, Lewis paid the $10,000 earnest money deposit via ACH transfer (Payment ID EN-UHVJ301G3) from his Wells Fargo Premier Checking account to Coldwell Banker Anchor Real Estate / Shelby State Bank / Anchor Real Estate of Hart, PC. **Exhibit 6,** Earnest Money Payment Record (July 4, 2026).

32.    The earnest money deposit was confirmed and deposited on July 6, 2026, at 6:03 PM EST.  **Exhibit 7**, Earnest Money Deposit Confirmation (July 6, 2026).  The earnest money was accepted by Ms. Vargas and/or the listing agent before the home inspection took place.

33.    Lewis, through his agent, also contemporaneously provided proof of funds to Ms. Vargas and/or her listing agent.

34.    On July 7, 2026, a home inspection of the Property was conducted by JB Home Inspection LLC (Inspector Jerry Buday), Report No. 260707A.  The inspection found the Property in overall satisfactory condition with only minor, non-material maintenance items noted (e.g.,

7

recommended railing on deck steps as a safety measure, gutter cleaning, monitoring of roof for moss/mold).  No major structural defects or safety hazards of a material nature were identified. **Ex. 1**, Home Inspection Report (July 7, 2026).

**C.**     **Peter Vargas's Repeated Acknowledgments of the Sale**

35.     On July 7, 2026, Peter Vargas left a voicemail for Lewis in which he expressly acknowledged the pending sale of the Property to Lewis, confirmed Lewis was the purchaser, and discussed logistics for removing his personal belongings from the Property in anticipation of closing.  The complete voicemail transcription is as follows:

> "Hey, Jeff, it's Pete Vargas. Um, my wife sent me your number, um, just, uh, we're-- I'm the one who-- We own the [P]entwater house that you guys are pretty close to buying here. So, um, she just mentioned there's a lot of stuff in our garage that we were planning to take home. Not all the furnishings and all of that stuff internally inside the house. Um, [Kim] did an incredible job of just [the] decoration of that house, but a lot of the outside stuff, and she said, you were interested in the 4 by 4 and maybe even all the workout equipment. So yeah, I would love to chat with you about that. And, you know, it's getting things set up to get it back to Colorado, and we were trying to decide, am I gonna keep it at my house in Colorado? Or are we gonna sell it? So anyways, give me a call, man. All right, thanks."

**Exhibit 8**, Transcription of Peter Vargas's July 7, 2026 Voicemail.

36.     In this voicemail, Peter Vargas expressly acknowledged the pending sale of the Property to Lewis ("We own the [P]entwater house that you guys are pretty close to buying here"), confirmed Lewis was the purchaser, and admitted that he and his wife needed to move their belongings out of the Property back to Colorado, consistent with Defendants' obligation to vacate and convey the Property at closing.

37.     During this same period, Lewis received text messages from Peter Vargas describing Peter Vargas's active daily life in Pentwater, including riding a scooter around Pentwater and playing in a tennis tournament, demonstrating that Peter Vargas was, during this period, alert, socially engaged, and functioning independently in daily life:



**Exhibit 9**, Peter Vargas/Jeff Lewis Text Messages.

38.    Before and immediately after the execution of the Purchase Agreement, the Vargases never made any statements or expressed any concerns to their listing agent, selling agent, the buying agent, or Lewis that Peter Vargas had any capacity issues, or even any health issues at all.

**D.    Peter Vargas's Attempted Interference With the Purchase Agreement**

39.    In mid-July, however—approximately two weeks before closing was scheduled to occur and apparently as part of his attempt to navigate marital issues stemming from his infidelity to his wife—Peter Vargas suddenly decided that he (who has no ownership interest whatsoever in the Property), would attempt to prevent the scheduled closing from moving forward.

40.    To attempt to accomplish this goal, on July 13, 2026, at 6:23 PM, Peter Vargas sent Lewis a text message purporting to rescind the Purchase Agreement due to (unidentified) "severe medical conditions and (unidentified) "big traumas" he purportedly experienced *after the purchase*

9

*agreement was signed*, which nevertheless confirmed he understood the nature and terms of the Purchase Agreement.  The complete text of that message is as follows:

> "Your attorney let me know to make you aware via writing that we would be rescinding the purchase agreement due to severe medical conditions and big traumas happening in life. I will make sure my attorney also emails him directly. I will also put it in writing to you via email but don't have your email address. He let me know to make you aware. Wished we could have meet in person but we will move forward with attorneys."

**Ex. 9**, Peter Vargas/Jeff Lewis Text Messages.

41.    On July 15, 2026, the undersigned counsel sent written correspondence via email and U.S. mail to Peter Vargas, Kimberly Vargas, and the real estate brokers and agents (Monica Owens, Dodie Stark, and Sarah Hardy of Coldwell Banker Anchor), requesting written confirmation by 5:00 p.m. Eastern on July 17, 2026, that closing would proceed as required under the Purchase Agreement.  The demand letter noted that the Agreement's merger and integration clause bars unilateral rescission based on unspecified medical conditions, and issued a litigation hold and evidence preservation demand.  **Exhibit 10,** July 15, 2026, Letter.

42.    On July 16, 2026, Eric R. Starck of Miller Johnson responded, confirming that he represented "Mr. Vargas" only regarding the Property.  Further correspondence was exchanged between counsel from July 16 through July 25, 2026, regarding Peter Vargas's position.

43.    On July 25, 2026, the undersigned counsel sent a follow-up letter and email to Peter Vargas's counsel setting forth a detailed legal argument that, under Michigan law, Kimberly Vargas's personal signature on the Purchase Agreement is legally sufficient to bind the Trust and to obligate conveyance of marketable title, regardless of whether she signed with an express trustee designation and regardless of Peter Vargas's capacity.

44.    On July 29, 2026, counsel for Peter Vargas sent a letter to the undersigned counsel on behalf of "Mr. Pedro Vargas" declaring the Purchase Agreement void.  The letter asserted that

10

Peter Vargas lacked capacity to enter into the Agreement due to psychological conditions (alleged diagnoses and treatment of an unspecified trauma- and stressor-related disorder, adjustment disorder with mixed anxiety and depressed mood, alcohol use disorder, PTSD, narcissistic personality disorder, schizotypal disorder, and borderline personality disorder).  **Exhibit 11,** 7/29/2026 Letter from Starck to Hofman.

45.     The letter separately asserted that the Kimberly Vargas Revocable Trust—which Peter Vargas's counsel admitted holds title to the Property—was not a party to the Purchase Agreement and that Kimberly Vargas supposedly did not sign in her "fiduciary" capacity.  *See id.*

46.     Simultaneously and contradictorily, in the same July 29, 2026 correspondence transmitting that letter, Peter Vargas's counsel stated that Peter Vargas *was* willing to contract with Lewis for an option to purchase the Property at the same $1,525,000 price if the Vargases decided to sell within the next three years, and a right of first refusal thereafter—demonstrating that Peter Vargas apparently retains the capacity to negotiate and enter into *other* contracts regarding the very same Property, but apparently just not contracts to sell it.  **Exhibit 12**, 7/29/2026 Email from Starck to Hofman.

47.     In other words, it appears Peter Vargas's position is that he has the capacity to enter into contracts for an option to purchase the Property and for a right of first refusal on the Property, but not contracts to sell the Property; *i.e.*, he has the capacity to enter some contracts on the Property but not others.  *See id.*

48.     Lewis does not agree to any rescission of the Purchase Agreement.  The Purchase Agreement contains no right of rescission based on unspecified medical conditions or personal circumstances.

49.     Paragraph 30 of the Purchase Agreement further provides that it "is the final expression of the complete agreement of Buyer and Seller, and there are no oral agreements existing between Buyer and Seller," and that it "may be amended only in writing signed by Buyer and Seller."  The Purchase Agreement thus contains a merger and integration clause that bars oral or unilateral amendment or rescission.

## COUNT I: BREACH OF CONTRACT

50.     Plaintiff restates and realleges all preceding paragraphs as though fully set forth herein.

51.     Title to the Property is held by Kimberly Vargas, Trustee of the Kimberly Vargas Revocable Trust dated January 30, 2017, of which Kimberly Vargas is the Settlor, sole current Trustee, and sole lifetime beneficiary.  The Trust is revocable.

52.     Under Michigan law, a settlor of a revocable trust who retains the power to revoke is deemed the absolute owner of the trust property.  MCL 556.128.  The assets of a revocable trust remain subject to the settlor's own dealings during her lifetime.  MCL 700.7506(1)(a).

53.     Michigan courts have held that where the settlor is also the trustee and sole lifetime beneficiary, the settlor and the trust are treated as one and the same for purposes of the settlor's dealings with trust property, such that the trust need not independently execute or be a party to an agreement conveying trust property.  *See In re Hertsberg Inter Vivos Trust*, 457 Mich. 430, 433-34 (1998); *McDonell v. Erickson*, No. 315343, 2014 WL 2935949, at *5 (Mich. Ct. App. June 26, 2014) (settlor of revocable trust "would still be deemed the absolute owner" of trust property, "negating the need to include trust capacity language"); *Shatter v. Atchinson Ford Sales, Inc.*, No. 23-10144, 2024 WL 410257, at *3-4 (E.D. Mich. Jan. 5, 2024); *Mickam v Joseph Louis Palace Trust*, 849 F. Supp. 516, 523 (E.D. Mich. 1993).

12

54. Accordingly, Kimberly Vargas's personal signature on the Purchase Agreement is legally sufficient to bind the Trust and to obligate conveyance of marketable title to the Property, regardless of whether she signed with an express trustee designation and regardless of Peter Vargas's capacity.  Peter Vargas's capacity to contract is therefore legally irrelevant to the enforceability of the sale.

55. The Certificate of Trust confirms that the Trustee is "authorized . . . to acquire, sell, convey, pledge, mortgage, lease, or transfer title to any interest in real or personal property, without limitation." **Ex. 3, Vesting Documents/Certificate of Trust.**

56. In the alternative, and only to the extent Peter Vargas is found to hold any independent legal interest in the Property apart from the Trust, Peter Vargas in fact possessed the requisite legal capacity to enter into the Purchase Agreement on June 26, 2026.

57. Peter Vargas's capacity is demonstrated by: (a) his July 7, 2026 voicemail acknowledging and confirming the sale of the Property; (b) his contemporaneous text messages reflecting an active, socially engaged daily life, including riding a scooter around Pentwater and playing in a tennis tournament; and (c) his own counsel's simultaneous July 29, 2026 offer to enter into a new option-to-purchase and right-of-first-refusal agreement concerning the very same Property.  This conduct is inconsistent with genuine incapacity and is more consistent with seller's remorse.

58. The Purchase Agreement is a valid, binding, and enforceable contract between Plaintiff and Defendants for the sale of the Property at a purchase price of $1,525,000.

59. Lewis has performed all conditions precedent to closing required of him under the Purchase Agreement, including timely payment of the $10,000 earnest money deposit and completion of the home inspection with no unresolved objections.

60.    Defendants breached the Purchase Agreement by repudiating it, declaring it void, and refusing to proceed to the scheduled closing on August 3, 2026.

61.    As a direct and proximate result of Defendants' breach, Plaintiff has been damaged, including but not limited to loss of the benefit of his bargain and consequential damages.

**WHEREFORE**, Plaintiff Jeffrey D. Lewis respectfully requests that this Court enter judgment in his favor and against Defendants Peter Vargas and Kimberly Vargas, and further award Plaintiff compensatory damages, interest, costs, attorneys' fees where recoverable, and any other relief this Court deems just and proper.

**COUNT II: SPECIFIC PERFORMANCE**

62.    Plaintiff restates and realleges all preceding paragraphs as though fully set forth herein.

63.    Real property is unique, and the Property at issue is unique to Plaintiff given his deep personal and family connection to the Pentwater, Michigan community and the exceptional difficulty he faced over many years in locating a vacation home of sufficient size for his family in this area.  Accordingly, money damages are an inadequate remedy for Defendants' breach.

64.    Plaintiff has performed, or stands ready, willing, and able to perform, all his obligations under the Purchase Agreement, including tendering the balance of the purchase price at closing.

65.    Defendants have refused to perform their obligations under the Purchase Agreement and have declared the Agreement void.

66.    Plaintiff is entitled to an order of specific performance compelling Defendants to convey marketable title to the Property to Plaintiff in accordance with the terms of the Purchase Agreement.

14

**WHEREFORE**, Plaintiff Jeffrey D. Lewis respectfully requests that this Court enter an order of specific performance compelling Defendants to convey marketable title to the Property to Plaintiff in accordance with the Purchase Agreement, and further award Plaintiff costs and any other relief this Court deems just and proper.

### COUNT III: QUIET TITLE

67.    Plaintiff restates and realleges all preceding paragraphs as though fully set forth herein.

68.    Pursuant to MCL 600.2932, Plaintiff seeks a judicial determination and declaration of the parties' respective rights, title, and interest in the Property.

69.    An actual controversy exists concerning title to the Property given Defendants' purported rescission and void declaration and their competing assertions regarding the Trust's role as titleholder and alleged non-party to the Purchase Agreement.

70.    Plaintiff holds an equitable interest in the Property by virtue of the fully executed and binding Purchase Agreement and is entitled to a determination that Plaintiff's rights to the Property are superior to any claim of Defendants to withhold conveyance.

71.    Plaintiff is entitled to an order quieting title in Plaintiff upon closing.

**WHEREFORE**, Plaintiff Jeffrey D. Lewis respectfully requests that this Court enter judgment quieting title to the Property in Plaintiff's favor and declaring Plaintiff's rights superior to any claim of Defendants to withhold conveyance, and further award Plaintiff costs and any other relief this Court deems just and proper.

15

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Jeffrey D. Lewis respectfully requests that this Court enter judgment in his favor and against Defendants Peter Vargas and Kimberly Vargas, and grant the following relief:

(a)    An order of specific performance of the Purchase Agreement compelling Defendants to convey marketable title to the Property to Plaintiff at closing;

(b)    Compensatory damages in an amount to be proven at trial;

(c)    Attorneys' fees and costs of this action;

(d)    Such other and further relief as this Court deems just and proper.

Respectfully submitted,

**VARNUM LLP**
*Attorneys for Plaintiff*

Dated: August 4, 2026                    By:    */s/ Herman D. Hofman*
                                              Herman D. Hofman (P81297)
                                              P.O. Box 352
                                              Grand Rapids, MI  49501-0352
                                              (616) 336-6000
                                              hdhofman@varnumlaw.com

## JURY DEMAND

Plaintiff hereby demands a jury trial in this matter.

Respectfully submitted,

**VARNUM LLP**
Attorneys for Plaintiff

Dated:  August 4, 2026                    By:    */s/ Herman D. Hofman*
                                              Herman D. Hofman (P81297)
                                              P.O. Box 352
                                              Grand Rapids, MI 49501-0352
                                              (616) 336-6000
                                              hdhofman@varnumlaw.com

16

## EXHIBIT LIST

Exhibit 1 – 7/7/2026 Home Inspection Report

Exhibit 2 – Title Insurance Commitment

Exhibit 3 – Vesting Documents/Certificate of Trust of the Kimberly Vargas Revocable Trust

Exhibit 4 – Seller's Disclosures

Exhibit 5 – Purchase Agreement (executed June 26, 2026)

Exhibit 6 – Earnest Money Payment Record (July 4, 2026)

Exhibit 7 – Earnest Money Deposit Confirmation (July 6, 2026)

Exhibit 8 –Transcript of Peter Vargas's July 7, 2026 Voicemail

Exhibit 9 – Peter Vargas/Jeff Lewis Text Messages

Exhibit 10 – July 15, 2026 Letter

Exhibit 11 – 7/29/26 Letter from Starck to Hofman

Exhibit 12 – 7/29/26 Email from Starck to Hofman